IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NICHOLAS HALL,

           Plaintiff,

v.                                               CIVIL ACTION NO.   2:15-cv-07589

BAYER CROPSCIENCE, LP, et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

      Pending before the court is Plaintiff's Motion to Remand this Case to the Circuit Court of Kanawha County, West Virginia [ECF No. 10]. For reasons more fully discussed herein, the plaintiff's Motion to Remand is **DENIED**.

      **I.**    **Factual and Procedural Background**

      The plaintiff was employed by the defendant, Bayer Cropscience, LP ("Bayer"), at its Institute, West Virginia, facility. Compl. ¶ 13 [ECF No. 1-1]. The plaintiff worked as a chemical operator for Bayer and was a union member covered by the terms of a collective bargaining agreement ("CBA") between Bayer and District 54 of the International Association of Machinists and Aerospace Workers, AFL-CIO, effective June 11, 2012, through June 14, 2015. Compl. ¶ 13; s*ee also* Defs.' Mem. Supp. Mot. Dismiss 2 [ECF No. 8]. The defendant, Steve Hedrick, is a vice president for Bayer and is the top executive at Bayer's facility in Institute, West Virginia. Compl. ¶ 3.

Around the middle of 2012, Bayer announced it would be discontinuing certain production lines at its facility and some 220 employees were expected to lose their employment as a consequence. Compl. ¶ 10. Bayer, after negotiating with the plaintiff's union, decided that it would offer a Voluntary Severance Plan, which was intended to lessen the negative financial impact on certain affected Bayer employees. *Id.* ¶ 11; *see also* Defs.' Mem. Supp. Mot. Dismiss 2. The terms and conditions of the Voluntary Severance Plan are spelled out in Appendix D ("Layoff Allowance Plan") of the CBA and Letter Agreement IX ("Separation and Retention Agreement"), which were incorporated into the CBA with union approval. Notice of Removal ¶ 10(b) [ECF No. 1]; *see also* App. D 54–56; Ltr. Agr. 89–90 [ECF No. 1-2].

On June 27, 2012, Mr. Hedrick issued a memorandum to all employees at the Bayer Institute Industrial Park. The subject of the memorandum regarded "Employee Lay-off Timing." Mem. to Emps. 1 [ECF No. 1-1]. The plaintiff believes that the memorandum "promised that Bayer would pay the [p]laintiff $25,000 for voluntarily resigning his employment position if he stayed until at least July 30, 2012." Compl. ¶ 15. Acting on his belief, the plaintiff advised Bayer on or before July 5, 2012, that he would like to volunteer for layoff. *Id.* ¶ 17. The plaintiff was offered a position with Dow Chemical Corporation ("Dow"). *Id.* ¶ 18. The plaintiff advised Mr. Hedrick that he had enough vacation and/or leave time to run his employment with Bayer through July 30, 2012, thereby believing that he was qualified for the severance payment. *Id.* ¶ 19. The plaintiff's supervisor informed the plaintiff that, while he did have sufficient vacation time to run his employment beyond July 30, 2012, the plaintiff could not simultaneously work for both Dow and Bayer. *Id.* ¶ 21. Nonetheless, the plaintiff resigned from his employment with Bayer on July 5, 2012. *Id.* ¶ 25.

The plaintiff filed his Complaint against the defendants in the Circuit Court of Kanawha County, West Virginia, on April 28, 2015, alleging the defendants violated the West Virginia Wage Payment and Collection Act ("WPCA"). Compl. ¶¶ 27–31. The plaintiff claims entitlement to $25,000 in compensatory damages; $75,000 in liquidated damages under the WPCA; and attorney fees. *Id.* ¶¶ 29–31.

The defendants timely removed this action to federal court on June 11, 2015, asserting this court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, to wit: "[T]he matter involves resolution of a question arising under the Constitution, laws or treaties of the United States, specifically 29 U.S.C. § 185 [Labor Management Relations Act ("LMRA")] and 29 U.S.C. § 1144(a) [Employee Retirement Income Security Act ("ERISA")]." Notice of Removal ¶ 1. The plaintiff filed his Motion to Remand and supporting memorandum of law on June 29, 2015, claiming that the LMRA and ERISA statutes are not implicated because he could rely entirely on the June 27, 2012 memorandum from Mr. Hedrick to support his claim under the state WPCA. Pl.'s Mot. Remand 1, ECF No. 10; *see also* Pl.'s Mem. Law Supp. Mot. Remand 4–11 [ECF No. 11]. The defendants filed their response to Plaintiff's Motion to Remand on July 6, 2015. Defs.' Resp. Pl.'s Mot. Remand [ECF No. 13].

### II. Legal Principles

A defendant may remove any case filed in state court over which federal courts have original jurisdiction to the district court of the United States for the district and division within which the action is pending. 28 U.S.C. § 1441. After a defendant has removed the case to federal court, the defendant bears the burden of establishing federal jurisdiction. *Mulcahey v. Columbia Organic Chems. Co., Inc.,* 29 F.3d 148, 151 (4th Cir. 1994).

A federal court has jurisdiction over a removed case if it would have had original jurisdiction over the case. 28 U.S.C. § 1441(b). Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over all civil actions arising under the laws of the United States. For purposes of § 1331, an action arises under the laws of the United States if a federal claim appears on the face of a well-pleaded complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). This is known as the "well-pleaded complaint" rule. *Id.* The Supreme Court has determined that "whether a case is one arising under the Constitution or a law or treaty of the United States . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76 (1914)).

> There is an exception, however, to the well-pleaded complaint rule. When a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed. This is so because when the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.

*Davila*, 542 U.S. at 207–208 (citations omitted).

### III.  Discussion

#### A. ERISA Preemption

##### 1. *Conflict Preemption Versus Complete Preemption*

In order to determine whether the plaintiff's claims are preempted, thereby giving rise to federal question jurisdiction, I must first distinguish between "conflict preemption" under ERISA and "complete preemption." Under conflict preemption, which is also known as "ordinary" preemption, "state laws that conflict with federal laws are preempted, and preemption is asserted

4

as 'a federal defense to the plaintiff's suit.' As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 186–87 (4th Cir. 2002) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). In terms of ordinary preemption, state laws conflict with ERISA, and are therefore preempted by ERISA, if they "relate to" an ERISA plan. 29 U.S.C. § 1144(a). In those types of situations, ERISA conflict preemption may be used as a defense to a state-law action, but it does not provide a basis for removal to federal court.

### 2. *Complete Preemption Under ERISA*

In contrast to ordinary preemption, complete preemption embodies an actual federal jurisdictional doctrine. "Underlying the complete preemption doctrine is the notion that the federal policies implicated by a federal statute are sufficiently important to override the plaintiff's effort to rely on state law." *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir. 1996). Complete preemption exists where "Congress 'so completely preempts a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Darcangelo*, 292 F.3d at 187 (quoting *Metro. Life Ins. Co.*, 481 U.S. at 63–64). Accordingly, this doctrine "trumps the plaintiff's characterization of his claim" for purposes of the well-pleaded complaint rule "by 'converting an ordinary state common law complaint into one stating a federal claim.'" *Custer*, 89 F.3d at 1165 (quoting *Metro. Life Ins. Co.*, 481 U.S. at 65). Under ERISA, "[t]he only state law claims properly removable to federal court are those that are 'completely preempted' by ERISA's civil enforcement provision, § 502(a)." *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 371 (4th Cir. 2003) (quoting *Darcangelo*, 292 F.3d at 187). Accordingly, in order for this court to properly exercise jurisdiction over this case, ERISA must completely preempt the

plaintiff's state-law claims.

### 3. *The plaintiff's claim is not preempted by ERISA*.

The plaintiff's claim cannot be preempted by ERISA because the benefit to which he is claiming entitlement does not require an ongoing administrative plan to satisfy the employer's obligation. The plaintiff in this case is not alleging a claim under Bayer's Separation and Retention Agreement, Letter Agreement IX, which the record demonstrates allows for a qualifying employee to choose among several plan options. Ltr. Agr. 89–90. Instead, the plaintiff alleges that he is entitled to a one-time, lump-sum severance payment. While the plaintiff appears to intentionally avoid direct reference to the CBA's layoff allowance provisions, the origins of any promise to pay a lump sum severance amount upon the manifestation of a triggering event is of no consequence under an ERISA preemption analysis because the Supreme Court has determined that such one-time, lump sum obligations do not create "benefit plans" under ERISA:

> The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize. The employer may well *never* have to pay the severance benefits. To the extent that the obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes. To do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility. The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits.

*Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 12 (1987). "Congress intended pre-emption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations. This concern only arises, however, with respect to benefits whose

6

provision by nature requires an ongoing administrative program to meet the employer's obligation." *Id.* at 12. "While an employer's one-time grant of some benefit that requires no administrative scheme does not constitute an ERISA plan, a grant of a benefit that occurs periodically and requires the employer to maintain some ongoing administrative support generally constitutes a plan." *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 190 (4th Cir. 2007) (citations omitted).

The plaintiff does not make any allegations that he is entitled to a benefit under an ERISA benefit plan. Rather, the plaintiff alleges entitlement to a one-time, lump-sum severance payment.[1] As the Supreme Court explained in *Fort Halifax Packing Co., Inc.*, such payments do not create an ongoing administrative program and, thus, do not conjure ERISA preemption under § 502. I find that the plaintiff's action is not completely preempted by ERISA.

### B. LMRA Preemption

The complete preemption corollary to the well-pleaded complaint rule also applies to claims under § 301 of the LMRA. *Owen v. Carpenters' Dist. Council*, 161 F.3d 767, 772 (4th Cir. 1998). "[I]f the plaintiff's state law claim is preempted by § 301 of the LMRA, the action may be removed to federal court even though the plaintiff's complaint does not include a federal cause of action." *Id.* at 772 (citing *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 258–64 (1994)). "Section 301 of the LMRA provides that '[s]uits for a violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties.'" *Owen*, 161 F.3d at 772 (quoting 29 U.S.C. §

---

[1] Appendix D of the CBA states that "[p]ayments of layoff allowance will be made by the paymaster on the regular pay days during the respective periods *unless a lump sum payment is requested by the employee*." App. D 55 [ECF No. 1-2] (emphasis added).

7

185(a)). "[T]he goal of § 301 preemption is to promote the uniform interpretation of collective bargaining agreements." *Owen*, 161 F.3d at 772. "Section 301 not only provides federal courts with jurisdiction over employment disputes covered by collective bargaining agreements, but also directs federal courts to fashion a body of federal common law to resolve such disputes." *McCormick v. AT&T Technologies, Inc.*, 934 F.2d 531, 534 (4th Cir. 1991). "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. of S. Cal.*, 463 U.S. 1, 23 (1983) (citations omitted).

"According to the Supreme Court, preemption occurs only when resolution of a state law claim depends upon the meaning of the collective bargaining agreement . . . or when resolution of the state law claim is 'inextricably intertwined with consideration of the terms of the labor contract.'" *Owen*, 161 F.3d at 773 (citations omitted) (quoting *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213 (1985); *see also Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405–06 (1988)). The Supreme Court was "clear that when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be [preempted]." *Livadas v. Bradshaw,* 512 U.S. 107, 124 (1994). "[W]hether a state cause of action may proceed in state court depends upon the 'legal character of a claim, as independent of rights under the collective bargaining agreement.'" *Owen*, 161 F.3d at 773 (citations omitted).

    1. *The plaintiff's claim is not independent of rights conveyed under the CBA.*

The fact that the plaintiff does not directly refer to the CBA in his Complaint is of no consequence when the legal character of his claim is not independent of rights under the CBA. *See*

8

*Owen*, 161 F.3d at 773. As the plaintiff acknowledged, "a plaintiff may not disguise as a state law claim a claim that, due to 'complete preemption,' can only be characterized as a federal claim." Pl.'s Mem. Law Supp. Mot. Remand 3. The plaintiff asserts that his right to payment stems from "promises" made by Bayer, through Mr. Hedrick, in a memorandum to all employees. Compl. ¶¶ 14–17. Under federal labor law, however, employers are not free to unilaterally alter certain terms and conditions of employment when employees are members of a certified bargaining unit—a union. The National Labor Relations Act ("NLRA") "makes it an unfair labor practice for an employer 'to refuse to bargain collectively with the representatives of his employees.'" *Dorsey Trailers, Inc. v. Nat'l Labor Relations Bd.*, 233 F.3d 831, 838 (4th Cir. 2000); 29 U.S.C. § 158(a)(5). The NLRA requires union leadership and employers to "confer in good faith with respect to wages, hours, and other terms and conditions of employment." 29 U.S.C. § 158(d). "Matters falling within the category of wages, hours, and other terms or conditions of employment are mandatory subjects of bargaining" and "[a]n employer commits an unfair labor practice under [the NLRA] when it makes a unilateral change or otherwise fails to bargain in good faith on any mandatory subject." *Dorsey Trailers*, 233 F.3d at 838. Severance pay is a term and condition of employment subject to mandatory bargaining under the NLRA. *Id.* at 843. Bayer, through Mr. Hedrick, was simply not able to enter into separate agreements with employees regarding terms and conditions of employment that are subject to mandatory collective bargaining under federal law. Accordingly, I find that the plaintiff's reliance on Mr. Hedrick's memorandum is misplaced.

> 2. *The plaintiff's claim is inextricably intertwined with consideration of the terms and conditions of the CBA.*

The plaintiff received the benefit of having his union leadership collectively bargain for the terms and conditions of his employment with Bayer. The plaintiff's Complaint concerns layoff

severance benefits only. Such benefits, which are subject to mandatory collective bargaining, are established in Appendix D of the CBA. App. D. [ECF No. 1-2]. The purpose of Appendix D "is to assist an employee, laid off on account of lack of work, pending the location of another position or during the waiting period for Unemployment Compensation benefits." *Id*. Paragraph "D" of the appendix states that "[a] layoff allowance is not payable to an employee who terminates his/her employment voluntarily, or who is discharged, or who resigns by Company request, or who is granted leave of absence." *Id.*

The plaintiff's case is distinguishable from his cited case of *Stump v. Kanawha Cyprus Co.*, 919 F. Supp. 221 (S.D. W. Va. 1995). In *Stump*, the plaintiff sought payment of final wages from his defunct employer. *Stump*, 919 F. Supp. at 223. The plaintiff filed a claim under the West Virginia WPCA, and the case was removed to federal court under the auspices of LMRA preemption. *Id.* The federal district court determined that interpretation of a collective bargaining agreement was not necessary in that case because a simple appendix was included with the collective bargaining agreement that provided an easy means to determine appropriate damages. *Id.* at 224–225. The case at bar, however, concerns a benefit that is wholly derived from a collective bargaining agreement and does not implicate the WPCA. "[T]he WPCA itself 'does not create a right to compensation. Rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned.'" *Adkins v. American Mine Research, Inc.*, 765 S.E.2d 217, 221 (W. Va. 2014) (internal quotations omitted); *Spano v. Metro. Life Ins.*, 2:09–cv–01243, 2011 WL 2180657, at *2 (S.D. W. Va. June 2, 2011). Unlike wages, severance pay is not covered by the WPCA. *See* W. Va. Code § 21-5-1(c),(l).

10

The plaintiff's claim requires a review of the CBA to determine whether he is even entitled to the severance pay he seeks. Thus, the plaintiff's claim must rise and fall with the terms of the CBA, and it is thus clear to me that his claim is so inextricably intertwined with consideration of the terms of the CBA that it is necessarily preempted by § 301 of the LMRA.

### IV. Conclusion

For these reasons, Plaintiff's Motion to Remand [ECF No. 10], is **DENIED**. The plaintiff's request for an assessment of costs and fees is also **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:    October 5, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE